IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ) | |
| ) | |
| BRAY & JAMISON, PLLC, ) | CASE NO. 11-38957-H3-11 |
| ) | |
| Debtor, ) | |
| ) | |

## MEMORANDUM OPINION

The court has held a hearing on its order to show cause (Docket No. 58) why the above captioned case should not be dismissed in light of the appearance that Debtor has almost no operations other than continuing with a few state court lawsuits, and that Debtor may have filed the above captioned case in order to obtain unfair advantage in litigation commenced in state court against Anloc, L.L.C., Michael Coolures, James W. Alexander 1993 Living Trust, Alexander Energy, and DMA Oil & Gas, LLC (collectively, the "Anloc Parties"). The instant order to show cause followed a hearing on the "Expedited Motion to Appoint Chapter 11 Trustee" (Docket No. 14) filed by the Anloc Parties. The court has taken judicial notice of the evidence adduced with respect to the motion to appoint a trustee with respect to its order to show cause. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered dismissing the above captioned case. To the extent any of the Findings of Fact are considered Conclusions of Law, they

are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

Bray & Jamison, PLLC ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 23, 2011.

Debtor, a law firm focused on litigation, was formed on February 26, 2010.  At some time prior to that date, Bruce Jamison had operated a law practice, under the name "Jamison and Associates."  Jamison testified that, at one time, Jamison and Associates had had approximately 40 employees.  Jamison testified that, at one time, Bray worked for Jamison and Associates. Jamison testified that he has been practicing law for approximately 35 years, and Bray has been practicing law for approximately 20 years.[1]

For reasons not appearing in the evidence in the instant case, Jamison ceased the practice of law for an unspecified amount of time.  Jamison testified that he resumed the practice of law when Debtor was formed.

In the interim, Thomas Bray operated a law firm, either as the "Law Office of Thomas R. Bray" or "Bray and Associates." Bray testified that, although he has used the name "Bray and

---

[1] Both Jamison and Bray were evasive when asked whether Bray or anyone else was an attorney who was an "associate" of Jamison & Associates.

Associates," he has never had any associates.  He testified that he still signs some pleadings as "Bray and Associates" in a matter that began before Debtor was incorporated.

Bray testified that Debtor was incorporated two days before it took on representation of the Anloc Parties.  He testified that, prior to the time Debtor was incorporated, he and Jamison had agreed to represent Richard Fuqua in a separate matter.[2]  Fuqua testified that he introduced both Jamison and Bray[3] to the Anloc Parties.

Bray testified that Debtor signed five separate fee agreements to represent the Anloc Parties related to litigation against Petrodome Energy, LLC and Petrodome Hockley, LLC.  He testified that the underlying litigation between the Anloc Parties and the Petrodome Parties was settled.

Jamison testified that at one time, Debtor had hired one associate attorney, and was looking for a second associate attorney, to work on Debtor's representation of the Anloc Parties.  He testified that Debtor also hired several legal assistants or paralegals.  He testified that, since disputes have

---

[2]Fuqua, an attorney who appears frequently in the bankruptcy courts in this district, has appeared in this case as a creditor, and has been present at the hearings on both the motion to appoint a trustee filed by the Anloc Parties and the instant order to show cause.

[3]When described as "Jamison and Bray," the court refers to Mr. Jamison and Mr. Bray as individuals, not the Debtor entity Bray & Jamison PLLC.

arisen with the Anloc Parties, Debtor has been forced to release all its employees, such that the only remaining employees are Jamison and Bray.  Bray testified that neither he nor Jamison earns a salary from the firm, but both take draws from the firm.

Bray testified that Debtor ended up withdrawing from representation of the Anloc Parties, and suing the Anloc Parties in the same suit in which Debtor had represented the Anloc Parties.

The Anloc Parties have asserted that Jamison and Bray induced them to contribute non-cash settlement property (consisting of two mineral leases) the Anloc Parties were to receive in the Petrodome litigation to ACA Resources, LLC, an entity controlled by Jamison and Bray.  They have asserted that Jamison and Bray caused ACA Resources, LLC to disburse to Debtor a 40 percent working interest in the oil and gas leases, as a contingent fee that Debtor asserted it was owed, notwithstanding the fact that a dispute remained between the Anloc Parties and Debtor as to the fee.[4]

Other than the litigation on behalf of, and against, the Anloc parties, Bray testified that Debtor has been involved in two other pieces of litigation.  Bray testified that Debtor

---

[4] Bray also testified that Debtor conveyed to Fuqua's designee, the Fuqua Family Limited Partnership, one third of the working interest distributed to Debtor by ACA Resources, LLC. Bray testified that the conveyance has not been recorded.

represented David Joachim, and then filed suit against Joachim to collect its attorney fees. Jamison testified that, on the date of the hearing on the instant order to show cause, Debtor anticipated that Joachim would be paying his attorney fee to Debtor within a few days. Bray also testified that Debtor represented Joel Goffman with respect to some transactional work. He testified that Debtor also sued Goffman to collect its attorney fees. He testified that the Goffman matter was resolved postpetition. He testified that Debtor has not filed a motion to compromise with Goffman.

Jamison testified that the firm has "operations," in addition to the litigation that either has been completed or is nearing completion. He testified that he believes Debtor is about to be engaged in three matters: a suit involving governmental entities; an intellectual property infringement and breach of contract matter; and a matter involving a property owner's suit against governmental entities.

Jamison testified that Debtor is involved in one additional piece of litigation, filed by the Katy Prairie Conservancy ("KPC"). Jamison testified that, in that suit, KPC asserts that the two leases purportedly conveyed by Petrodome to the Anloc Parties are invalid.

Bray testified that the litigation between the Anloc Parties and Debtor proceeded prior to the filing of the instant

Chapter 11 case in the 157th and 281st Judicial District Courts of Harris County, Texas, and in a court in Washington County, Texas. He testified that the state courts have issued agreed injunctions providing that Debtor cannot alienate its working interest in the leases, and providing that the funds due pursuant to the leases are paid into the registry of the state courts.[5]

After Debtor filed the instant Chapter 11 case, the suits between inter alia, Debtor and the Anloc Parties, were removed to this court from the state courts. Debtor, ACA Resources, LLC, Jamison, and Bray removed suit from the 281st Judicial District Court of Harris County, Texas, in Adversary Proceeding No. 11-3530. The parties to that suit are Debtor, Jamison, Bray, the Anloc Parties, Fuqua, ACA Resources, LLC, and ACA Ventures II, LLC.[6]

As to the suit that was pending in the 157th Judicial District Court of Harris County, Texas (the original Petrodome litigation, which has become the repository of additional controversy between Debtor and the Anloc Parties as addressed above), Debtor, Jamison, Bray, ACA Resources, LLC, Fuqua, the Fuqua Family Limited Partnership and ACA Ventures II, LLC removed the suit to this court.

---

[5]Exactly which court holds the funds is not clear from the testimony.

[6]Bray testified that ACA Ventures II, LLC is an entity formed by Fuqua.

In summary, Debtor remains engaged in litigation against its former clients, the Anloc Parties, in litigation that was commenced in state court and removed to this court. Debtor has two apparent litigation matters pending but nearly complete, in which it sued its former clients to collect fees. Debtor's other operations consist of seeking new business. None of the operations have yet resulted in Debtor's obtaining new business.

In the instant case, Debtor initially filed its Chapter 11 petition with Bray signing the petition as Debtor's counsel. Bray signed the petition, using the "Bray and Associates" label beneath his signature. Bray testified that he did so because "it didn't seem that as an equity owner/employee, that it would be, it just didn't look right to me showing me for the firm filing the bankruptcy. So I just, I did show it, I think, individually." (Tr. 12/5/2011, at p. 16).

Jamison testified that Debtor filed the instant Chapter 11 case because Jamison and Bray need breathing space in order to make a living. He testified that he and Bray were unable to do anything except work on the Anloc matter, because the suits and grievances filed by the Anloc Parties against Jamison and Bray caused cash flow problems.

Conclusions of Law

Section 1112(b) of the Code governs conversion or dismissal of Chapter 11 cases.  Section 1112(b) provides in pertinent part:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--
>>
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>> (ii) that will be cured within a reasonable period of time fixed by the court.
>
> (3) The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

> (4) For purposes of this subsection, the term 'cause' includes--
>
>> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>> (B) gross mismanagement of the estate;
>> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>> (E) failure to comply with an order of the court;
>> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
>> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>> (K) failure to pay any fees or charges required under chapter 123 of title 28;
>> (L) revocation of an order of confirmation under section 1144;
>> (M) inability to effectuate substantial consummation of a confirmed plan;
>> (N) material default by the debtor with respect to a confirmed plan;
>> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b).

The Section 1112(b)(4) list of items identified as constituting cause for conversion or dismissal is non-exclusive.

See <u>In re Global Ship Systems, LLC</u>, 391 B.R. 193 (Bankr. S.D. Ga. 2007); <u>In re The 1031 Tax Group, LLC</u>, 374 B.R 78 (Bankr. S.D.N.Y. 2007).

The court may raise the question of whether a case should be dismissed or converted under Section 1112 of the Bankruptcy Code <u>sua sponte</u>.  <u>In re Starmark Clinics, LP</u>, 388 B.R. 729 (Bankr. S.D. Tex. 2008).

Courts consider the totality of the circumstances in determining whether there is cause for dismissal.  <u>Matter of Atlas Supply Corp.</u>, 857 F.2d 1061 (5th Cir. 1988).  This court has generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute.  <u>See</u> <u>e.g.</u>, <u>In re Starmark Clinics, LP</u>, 388 B.R. 729 (Bankr. S.D. Tex. 2008); <u>In re Kemper</u>, Case No. 04-82663-G3-7 (Slip Op. May 18, 2006); <u>In re Gamma Env. Services, Inc.</u>, Case No. 01-32689-H3-7 (Slip Op. July 18, 2001); <u>In re Leslie</u>, Case No. 98-35386-H3-11 (Slip Op. February 12, 1999).  <u>See also</u> <u>In re Mazzocone</u>, 200 B.R. 568 (E.D. Pa. 1996); <u>In re Ravick Corp.</u>, 106 B.R. 834 (Bankr. D.N.J. 1989); <u>Argus Group 1700, Inc. v. Steinman (In re Argus Group 1700, Inc.)</u>, 206 B.R. 757 (E.D. Pa. 1997).

The Fifth Circuit has identified the absence of good faith where the debtor's business was "mowing the grass and

waiting for market conditions to turn." In re Humble Place Joint Venture, 936 F.2d 814 (5th Cir. 1991).

In the instant case, Debtor's operations consist of litigating (as a party, not representing as attorneys) against its former clients, and seeking new clients. There is no indication of any ongoing business to reorganize. Were the instant case to remain in Chapter 11, the court likely would be compelled to appoint a Chapter 11 trustee, in light of the apparent self-dealing between Debtor and other entities owned by Jamison and Bray. However, Jamison and Bray are individuals. The court does not compel them to practice law solely through this Debtor entity, and the evidence indicates that they have practiced, both separately and together, through other entities. The sole matters involving this Debtor, as an entity, are its ongoing pieces of litigation against the Anloc Parties and KPC. The court concludes, in the totality of circumstances, that the above captioned Chapter 11 case should be dismissed.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned Chapter 11 case.

Signed at Houston, Texas on January 5, 2012.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE